No. 104112

IN THE

SUPREME COURT OF ILLINOIS

_____

| | | |
|---|---|---|
| NICHOLAS J. DELGADO, *et al.,* | ) | Direct Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 07 COEL 02 |
| | ) | |
| THE BOARD OF ELECTION | ) | |
| COMMISSIONERS OF THE CITY OF | ) | |
| CHICAGO, *et al.,* | ) | Hon. Nathaniel R. Howse, Jr. |
| | ) | Judge Presiding |
| Appellees. | ) | |

O R D E R

Appellants, Nicholas J. Delgado, Maria R. Godinez, and Diane G. Garcia, have appealed directly to our court pursuant to Supreme Court Rule 302(a)(1) (134 Ill.2d R. 304(a)(1)) from a judgment of the Circuit Court of Cook County which affirmed, on administrative review, an order of the Board of Election Commissioners of the City of Chicago (the Election Board) rejecting their challenge to nomination papers filed by Ambrosio Medrano for election to the office of alderman for the 25th Ward of the City of Chicago in the February 27, 2007, municipal election. The Attorney General of the State of Illinois has been granted leave to intervene as an additional appellant. Because the election to which this challenge pertains is imminent, we allowed a motion by appellants for expedited briefing and determined, on our own motion, that the matter would be submitted and decided without oral argument.

The court has now had the opportunity to read the parties' briefs and review the record of the proceedings below. Based on the record, the applicable statutes and rules of court and the arguments

of the parties, the court has determined that this litigation is properly disposed of through supervisory order rather than a direct appeal to our court. For the reasons that follow, we shall therefore dismiss the appeal. In the exercise of our supervisory authority, the judgment of the circuit court shall be vacated and the cause shall be remanded to the circuit court with instructions to enter judgment vacating the Election Board's decision and directing it to: (1) declare that Mr. Medrano is ineligible to run for the office of alderman pursuant to section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b)(West 2004)), (2) reject his nomination papers, and (3) remove his name from the ballot for the upcoming election. The court's judgment shall further provide that if removal of Mr. Medrano's name from the ballot cannot be accomplished prior to election day, the Election Board shall disregard any votes cast for him in determining the winner of the election.

## Background and Analysis

Ambrosio Medrano is a former Chicago alderman. In July of 1996, he was convicted in federal court of felony extortion arising out of misconduct in office. For that offense he was sentenced to 30 months in prison followed by 3 years of supervised release. Section 3.1-10-5(b) of the Municipal Code expressly provides that a person who "has been convicted in any court located in the United States of any infamous crime, bribery, perjury or other felony" is "not eligible for an elective municipal office." 65 ILCS 5/3.1-10-5 (West 2004). This bar is not necessarily permanent. Under the Election Code (10 ILCS 5/1-1, *et seq.* (West 2004)), convicted felons may recover their right to run for office through "the terms of a pardon for the offense or otherwise according to law." 10 ILCS 5/29-15 (West 2004). Although Medrano has completed his sentence, there is no dispute that he has received no pardon nor otherwise had his right to hold office restored. Medrano is therefore ineligible to hold elective municipal office in this State.

Despite his lack of eligibility, Medrano filed nomination papers to run for the office of alderman for the 25th Ward of the City of Chicago, an "elective municipal office" within the meaning of the prohibition contained in section 3.1-10-5(b) of the Municipal Code (65 ILCS 5/3.1-10-5 (b) (West 2004)). The record shows that Medrano had done that previously. In connection with that earlier effort, Medrano succeeded in obtaining a temporary restraining order from the circuit court of Cook County which permitted Medrano's name to appear on the ballot for the 2003 aldermanic election. A temporary restraining order is an emergency remedy issued to maintain the status quo while the court is hearing evidence to determine whether a preliminary injunction should issue. *Stocker Hinge Mfg. Co. v. Darnel Industries, Inc.*, 94 Ill.2d 535, 545 (1983). As a TRO, the order in Medrano's previous case was therefore necessarily limited in duration and interlocutory in nature. See *Bradford v. Wynford Prop.Owners' Assoc.*, 355 Ill.App.3d 736, 740 (2005) (TRO is inherently brief). Medrano lost the election for which the TRO was sought, and pursued the matter no further. The TRO was never superceded by a preliminary or permanent injunction, nor was it reviewed on appeal. Having served its purpose, it became *functus officio*. *Stocker Hinge Mfg. Co. v. Darnel Industries, Inc.*, 94 Ill.2d at 545.

As noted at the outset of this order, Medrano's nomination papers for the upcoming election were duly challenged by the appellants in this case. Appellants' challenge, which was timely and procedurally proper, was assigned by the Election Board to a hearing examiner who issued findings of fact and conclusions of law. Based on the evidence presented, arguments of counsel and the applicable law, the hearing examiner concluded that because Medrano was a convicted felon whose right to hold municipal office had not been restored, he was ineligible to hold elective municipal office, including the office of alderman in the City of Chicago. The hearing examiner therefore

recommended to the Election Board that the objections to Medrano's nomination papers be sustained and that Medrano's name not appear on the ballot for election to the office of alderman at the February 27, 2007, municipal election.

The Election Board rejected the hearing examiner's recommendation. Based on its analysis of various court cases, including the proceedings related to the TRO issued in connection with Medrano's failed 2003 election bid, the Election Board concluded that section 3.1-10-5(b) of the Municipal Code (65 ILCS 5/3.1-10-5(b)(West 2004)) is "unconstitutional and unenforceable as a violation of equal protection." It therefore overruled appellants' objection to Medrano's nomination papers, concluded that those papers were valid, and ordered that Medrano's name be printed on the ballot as a candidate for alderman for Chicago's 25th Ward.

In issuing its decision to permit Medrano's candidacy, the Election Board made no claim that the TRO issued in connection with the 2003 election remained in effect and precluded it from rejecting Medrano's nomination papers in this case. The TRO from the earlier cases was simply one of the legal authorities the Election Board weighed in assessing the constitutionality of section 3.1-10-5(b) of the Municipal Code (65 ILCS 5/3.1-10-5(b)(West 2004)).

As a creature of statute, the Election Board possesses only those powers conferred upon it by law. Any power or authority it exercises must find its source within the law pursuant to which it was created. Under section 10-10 of the Election Code (10 ILCS 5/10-10 (West 2004)), an election board's scope of inquiry with respect to objections to nomination papers is limited to ascertaining whether those papers comply with the provisions of the Election Code governing such papers. See *Nader v. Illinois State Board of Elections*, 354 Ill.App.3d 335, 340 (2004). Administrative agencies such as the Election Board have no authority to declare a statute unconstitutional or even to question

its validity. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill.2d 263, 278 (1998); see *Wiseman v. Elward*, 5 Ill.App.3d 249, 257 (1972). In ruling as it did, the Election Board therefore clearly exceeded its authority.

Any action or decision taken by an administrative agency in excess of or contrary to its authority is void. *Alvarado v. Industrial Commission*, 216 Ill.2d 547, 553-54 (2005); see *Citizens to Elect Collins v. Illinois State Board of Elections*, 366 Ill.App.3 993, 998 (2006). Because the constitutionality of section 3.1-10-5(b) of the Municipal Code (65 ILCS 5/3.1-10-5(b)(West 2004)) was the sole basis for the Election Board's determination that Medrano was eligible to hold office as a Chicago alderman notwithstanding that he had never been pardoned for his felony convictions, and because the Board's ruling on the constitutionality of the law is void and therefore a nullity, the Election Board's rejection of appellants' challenge to Medrano's nomination papers has no lawful basis.

Appellants promptly filed a complaint in the Circuit Court of Cook County pursuant to the Administrative Review Law (735 ILCS 5/3-101, *et seq*. (West 2004)) to obtain judicial review of the Election Board's decision. Because the Election Board's decision was premised exclusively on a legal determination it had no authority to make and directly contravened provisions of the Municipal and Election Codes which the Election Board was required to follow, the circuit court should have vacated the Board's decision and remanded with instructions for it to resolve appellants' challenge to Medrano's candidacy in accordance with the governing statutory requirements. Although this defect in the Election Board's decision was not directly raised in appellants' complaint, Illinois law provides that courts have an independent duty to vacate void orders and may *sua sponte* declare an order void. See *People v. Thompson*, 209 Ill. 2d 19, 27 (2004). Had the circuit court done that

here, it would have had no need to address the merits of the Election Board's constitutional analysis. Without a ruling on the constitutionality of the statute, there would, in turn, have been no basis for seeking direct review by our court under Rule 302(a).

The circuit court's resolution of this case is fatally infirm for two additional reasons. First, where, as here, a circuit court can decide a case without reaching the constitutionality of a statute, it is required to do so. Constitutional questions should only be reached as a last resort. *In re E.H.,* No. 100202, slip op. at 4 (Dec. 21, 2006). So important is this principle that before a circuit court takes the extraordinary step of declaring legislation unconstitutional, our rules now require that the circuit court state in writing that the finding of unconstitutionality is necessary to the decision or judgment rendered and that such decision or judgment cannot rest upon an alternate ground. 210 Ill.2d R. 18(c)(4). A circuit court judgment which fails to adhere to this requirement may be summarily vacated and remanded. *In re E.H.,* No. 100202, slip op. at 4 (Dec. 21, 2006). This is such a case. In affirming the Electoral Board's decision, the circuit court purported to comply with the formalities of Supreme Court Rule 18, but did not properly implement the substantive principles underlying that rule. The non-constitutional flaw in the Election Board's decision, which would have been dispositive of the litigation, went unmentioned..

Second, even if the circuit court had some justification for reaching the constitutionality of section 3.1-10-5(b) of the Municipal Code, it had no proper basis for holding that the statute violates the equal protection guarantees of the United States and Illinois Constitutions. To the contrary, the circuit court was able to find the law unconstitutional only by rejecting the appellate court's decision in *People v. Hofer*, 363 Ill.App.3d 719 (2006). This it was not permitted to do. *Hofer* specifically considered and specifically rejected the identical equal protection challenge to section 3.1-10-5(b) of

the Municipal Code at issue in this case. No other decision by the appellate court or this court conflicts with that precedent.

*Coles v. Ryan*. 91 Ill.App. 3d 382 (1980), an older decision from the Second District, has been cited as justification for the circuit court's rejection of *Hofer*. That opinion, however, did not involve section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b)(West 2004)), the statute at issue in this case and upheld by *Hofe*r. Morever, in marked contrast to *Hofer*, the State in *Coles* suggested no rational basis on which the law challenged in that case could be defended against an equal protection challenge. *Coles* was therefore clearly distinguishable as the court in *Hofer* unanimously recognized. The appellate court's ruling in *Hofer* that *Coles* was not dispositive of the constitutionality of section 3.1-10-5(b) was controlling on the circuit court, just as any other aspect of an appellate court's ruling would be.

Although *Hofer* was decided by a panel of the appellate court from the Fifth District, not the First District, where the Circuit Court of Cook County is located, that is of no consequence. Nearly two decades ago, we recognized that it is "fundamental in Illinois that the decisions of an appellate court are binding on all circuit courts regardless of locale." *People v.* Harris, 123 Ill.2d 113, 128 (1988). The notion that circuit courts are bound only by the appellate court decisions from their own district is a relic of the pre-1964 Illinois Constitution of 1870 and has been expressly disavowed by our court. See *People v. Layhew*, 139 Ill. 2d 476, 489 (1990). Until this court says otherwise, an appellate court's decision must therefore be followed regardless of the appellate court's district. See *People v. Harris*, 123 Ill. 2d at 129.

The record contains references to past cases which indicate that the Circuit Court of Cook County has, through the years, agreed with the Election Board in other cases that section 3.1-10-5(b)

of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2004)) is unconstitutional and cannot serve as a bar to the candidacy of convicted felons. Among these is a declaratory judgment issued in connection with Medrano's failed 2003 run for office. None of those decisions, however, are binding on other circuit judges in other cases, including this case. Under Illinois law, the decisions of circuit courts have no precedential value (see *Kennedy Brothers v. Property Tax Appeal Board*, 158 Ill. App. 3d 154, 165 (1987); *Village of Northbrook v. Cannon*, 61 Ill. App. 3d 315, 322 (1978)) and cannot trump decisions of the appellate court.

In *People ex rel. Birkett v. Bakalis*, 196 Ill.2d 510, 513 (2001), our court observed that:

"[b]eyond our leave to appeal docket, supervisory orders are disfavored. As a general rule, we will not issue a supervisory order unless the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice [citation] or intervention is necessary to keep an inferior tribunal from acting beyond the scope of its authority [citation]."

In this case, however, we believe that such considerations are present. Although the circuit court acted within its jurisdiction, the manner in which this case was handled presents important issues regarding the administration of justice, and direct and immediate action is necessary to insure that the Election Board adheres to the law and that any challenge to its decision in the circuit court comports with controlling principles of judicial review.

**Conclusion**

For the foregoing reasons, this appeal is dismissed. In the exercise of our supervisory authority,

IT IS HEREBY ORDERED that this cause is remanded to the circuit court with

-8-

instructions to enter judgment vacating the Election Board's decision and directing it to: (1) declare that Mr. Medrano is ineligible to run for the office of alderman pursuant to section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2004)), (2) reject his nomination papers, and (3) remove his name from the ballot for the upcoming election. The court's judgment shall further provide that if removal of Mr. Medrano's name from the ballot cannot be accomplished prior to election day, the Election Board shall be required to disregard any votes cast for him in determining the winner of the election.

IT IS FURTHER ORDERED that the circuit court shall enter its judgment as herein directed within 24 hours of this supervisory order, which is to be filed by the Clerk of the Supreme Court immediately. The circuit court's judgment shall not be subject to stay by the circuit court or the appellate court.

IT IS FURTHER ORDERED that after the Election Board complies with the circuit court's judgment, administrative review of its decision may be taken to the circuit court as provided by law.

IT IS FURTHER ORDERED that the mandate of this court shall issue forthwith.


Order entered by the court.

Chief Justice Thomas and Justices Freeman and Burke, N.P.