# ILLINOIS OFFICIAL REPORTS

***Genius v. County of Cook*, 2011 IL 110239**

| | |
|---|---|
| Caption in Supreme Court: | JACK L. GENIUS, Appellee, v. THE COUNTY OF COOK *et al.*, Appellants. |
| Docket No. | 110239 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Cook County Employee Appeals Board possessed jurisdiction to discharge plaintiff from his position as a police officer with the Forest Preserve District of Cook County, regardless of whether the employee's department head had actually discharged him or had merely recommended discharge, because any such purported defect was merely a matter of error which did not go to the board's jurisdiction as an administrative agency. |
| Decision Under Review | Appeal from the Appellate Court for the First District, reported at 398 Ill. App. 3d 321; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Mary K. Rochford, Judge, presiding. |
| Judgment | Appellate court judgment reversed; cause remanded. |
| Counsel on Appeal | Burton S. Odelson, Cary A. Horvath and Matthew M. Welch, of Odelson & Sterk, Ltd., of Evergreen Park, for appellants.<br><br>John H. Kelly and Ericka J. Thomas, of Ottosen Britz Kelly Cooper & Gilbert, Ltd., of Naperville, for appellee. |

Justices                     JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, and Karmeier concurred in the judgment and opinion.

Justice Theis took no part in the decision.

## OPINION

¶ 1      At issue in this appeal is whether the Cook County Employee Appeals Board possessed jurisdiction to discharge the plaintiff from his position as a police officer with the Forest Preserve District of Cook County. The appellate court held that it did not. 398 Ill. App. 3d 321. For the reasons that follow, we reverse the judgment of the appellate court and remand the cause to that court for further proceedings.

¶ 2                              Background

¶ 3      In May of 1996, the plaintiff, Jack L. Genius, was employed as a police sergeant by the Forest Preserve District of Cook County (Forest Preserve District). That month, plaintiff was indicted by a Vermilion County grand jury on criminal charges involving the unauthorized purchase of police badges from a police equipment company located in Danville, Illinois.

¶ 4      On June 17, 1996, the Forest Preserve District superintendent, Joseph Nevius, informed plaintiff in a letter that he was suspended without pay pending the resolution of the criminal charges filed against him. In a later hearing, Nevius explained that officials in Vermilion County had requested that the Forest Preserve District not take further disciplinary action against plaintiff while the criminal matter was proceeding.

¶ 5      On June 18, 1996, plaintiff wrote to Steven Castans, the Forest Preserve District chief of police, and asked "if any formal departmental charges" were to be filed and, if so, "the date and time of the Civil Service Hearings." Plaintiff also stated that he was demanding his "Due Process Rights as provided for under Civil Service Law." Castans did not respond to this letter.

¶ 6      The criminal case in Vermilion County ended in a mistrial. The criminal charges against plaintiff were ultimately dismissed in February 2001.

¶ 7      On May 1, 2001, plaintiff wrote to Superintendent Nevius and informed him that the charges in Vermilion County had been dismissed. Plaintiff formally requested reinstatement to his previous position and also requested full back pay from the date of his suspension on June 17, 1996.

¶ 8      On May 25, 2001, Nevius responded with a letter titled "Notice Of Intent To Seek Discharge." In this letter, Nevius informed plaintiff that it was his "recommendation as General Superintendent" that plaintiff be discharged because he had violated various rules and regulations of the Forest Preserve District and its police department. The letter set forth the relevant rules and stated that on "numerous occasions between 1991 and 1996" plaintiff

misrepresented to others that he was authorized to purchase police badges; purchased and sold police badges for personal gain; engaged in sexual conduct while on duty; allowed the use of alcohol and controlled substances in a police vehicle; and entered closed Forest Preserve District property for the purpose of engaging in sexual conduct. The letter also stated that, pursuant to the "Human Resources Ordinance," plaintiff had a right to file a written response to the charges.

¶ 9    The "Human Resources Ordinance" referenced by Superintendent Nevius was a Cook County ordinance (Cook County Ordinance No. 00–O–08) which came into effect April 5, 2000, and which changed the procedures for disciplining county employees. In general, the ordinance abolished the Cook County Civil Service Commission and its accompanying rules, established the Bureau of Human Resources and a new set of human resource rules, and created the Cook County Employee Appeals Board (Employee Appeals Board or Board) to hear disciplinary actions brought against employees. Cook County Municipal Code § 44–41 *et seq.* (amended Apr. 5, 2000).

¶ 10    Two differences between the old and new Cook County disciplinary rules bear mention here. First, under the civil service rules, a department head could impose a suspension of less than 30 days on a civil service employee, but only the Civil Service Commission itself could impose a suspension of more than 30 days and only after the employee had been given an opportunity to be heard in his own defense. Cook County Civ. Service R. IX, §§ 1, 12. In contrast, under the human resource rules, no limit is placed on the length of suspension that a department head may impose, although a suspension of more than 10 days must first be reviewed by the chief of human resources and the employee, upon request, has a right to a hearing with respect to such a suspension before the Employee Appeals Board. Cook County Municipal Code §§ 44–47(13), 44–50(a).

¶ 11    Second, under the civil services rules, a department head had no authority to discharge a civil service employee. Only the Civil Service Commission could do so. Cook County Civ. Service R. IX, § 1. Under the human resource rules, in contrast, a department head is authorized to discharge an employee, although that decision must first be reviewed by the chief of human resources and the employee, upon request, may then seek a hearing before the Employee Appeals Board. Cook County Municipal Code §§ 44–47(13), 44–50(a).

¶ 12    In an unaddressed document, dated June 21, 2001, plaintiff responded to Superintendent Nevius' "Notice of Intent to Seek Discharge," stating that the charges in the notice were not true. The document also asked "the reviewing authority" to deny Nevius' request for plaintiff's dismissal.

¶ 13    In a document dated June 22, 2001, titled "Grievance and Request for Employee Appeals Board Review," plaintiff wrote to the members of the Employee Appeals Board and alleged that, beginning on June 17, 1996, he had been suspended for more than 10 days without a hearing, despite the fact that he had demanded his "due process" rights in his letter to the Forest Preserve District chief of police on June 18, 1996. Plaintiff contended, therefore, that he had been "unlawfully suspended" for the five-year period from 1996 to 2001 and that his suspension was in violation of the human resource rules.

¶ 14    On August 7, 2001, Robert Furniss, an attorney for the Employee Appeals Board,

responded in a letter to plaintiff's grievance and request for review. In this letter, Furniss stated, "[a]fter reviewing your file, the Board has determined that it has no jurisdiction over the matter." The letter noted that "the actions in question took place in 1996 before the Human Resources Ordinance was expanded to encompass the Cook County Forest Preserve District" and "[t]herefore, the Board will not hear your appeal." Thus, according to Furniss, the Employee Appeals Board would not hear plaintiff's grievance that the Cook County human resource rules had been violated because those rules were not in effect at the time plaintiff's suspension was first imposed.

¶ 15 On August 2, 2001, Superintendent Nevius sent plaintiff a "Notice of Pre-Disciplinary Hearing[,] Amended Charges and Specifications." In this document, Nevius informed plaintiff that he had scheduled a "pre-disciplinary hearing" at the Forest Preserve District headquarters and that plaintiff would be able to present his response to the charges at this hearing.

¶ 16 On August 29, 2001, the predisciplinary hearing was held before a three-member panel of Forest Preserve District supervisors. During the hearing, plaintiff's attorney noted the letter that had been sent by Furniss. In light of the letter, plaintiff's attorney asked the panel whether plaintiff's claim that his suspension, which began in 1996, was unlawful would be governed by the human resource rules presently in effect or the civil service rules which were in effect at the time the suspension was imposed. The distinction was significant. Applying the civil service rules would permit plaintiff to argue that, whatever the outcome with respect to the discharge proceeding, his five-year suspension was unlawful, and he was entitled to back pay for five years, because he had been suspended for more than 30 days by a department head, rather than the Civil Service Commission, in violation of the civil service rules. If, on the other hand, the human resource rules were deemed applicable, plaintiff would be limited to arguing that his suspension was unlawful only from the date those rules took effect in April 2000, thereby reducing plaintiff's potential recovery to approximately one year of back pay.

¶ 17 The chairman of the panel declined to answer plaintiff's question, stating that the panel did not have the authority to make that determination. The chairman explained that the panel's only function was to present the amended charges to plaintiff, listen to his response, and then present a recommendation regarding discipline to Superintendent Nevius. The amended charges were then read by the panel and denied by plaintiff. Thereafter, the panel recommended to Nevius that discharge proceedings be initiated against plaintiff.

¶ 18 On September 26, 2001, Nevius filed a "Referral of Charges" before the "Civil Service Commission of Cook County." In this document, Nevius stated that he agreed with the predisciplinary panel's recommendation that discharge proceedings be initiated against plaintiff. He then stated that, "[p]ursuant to the Rules of the Civil Service Commission of Cook County," the matter was referred "to the Civil Service Commission for investigation and discharge proceedings."

¶ 19 Following litigation on matters not relevant here, a hearing was held on the charges brought against plaintiff on seven separate days from October 2003 through May 2004. The hearing was held before four of the five members of the Employee Appeals Board, with one

member of the Board having recused himself. Although held before the members of the Employee Appeals Board, the transcript of proceedings from the hearing is captioned "Before the Civil Service Commission of Cook County, Illinois," and the hearing proceeded procedurally under the civil service rules. Plaintiff did not object to this process and, indeed, argued throughout the hearing that his five-year suspension was unlawful and that he was entitled to five years of back pay.

¶ 20　　The Employee Appeals Board entered a written decision on September 20, 2004, under the caption "Cook County Employee Appeals Board." The decision noted that the proceeding was initiated by the filing of written charges with the Civil Service Commission of Cook County and then stated, in a footnote, "The Civil Service Commission has been abolished by County ordinance. All matters pending before the Civil Service Commission were (by the same ordinance) transferred and assigned to this Board for decision."

¶ 21　　With respect to the merits, the Board rejected some of the charges brought against plaintiff and sustained others. Based on the sustained charges, the Board concluded that there were sufficient grounds to discharge plaintiff. The Board also concluded that plaintiff had forfeited any claim that his five-year suspension was unlawful, finding that, although plaintiff sent a letter to the Forest Preserve District chief of police in June of 1996 requesting his due process rights, he did not notify the Civil Service Commission of his objection to the suspension.

¶ 22　　Plaintiff's discharge was upheld by the circuit court of Cook County on administrative review. Plaintiff appealed.

¶ 23　　In the appellate court, plaintiff raised three arguments: (1) the Employee Appeals Board erred in denying a motion that had been brought by plaintiff to dismiss the written charges on the basis of *laches*; (2) the Board's decision to discharge him was against the manifest weight of the evidence; and (3) the Board erred in denying his request for back pay because his suspension for more than 30 days violated the civil service rules. The appellate court, however, did not reach these issues. Instead, the appellate court concluded that the Employee Appeals Board lacked jurisdiction to render its decision because it had not complied with the disciplinary procedures in the human resource rules. Accordingly, the appellate court reversed the judgment of the circuit court and vacated the decision of the Board. 398 Ill. App. 3d 321. This appeal followed.

¶ 24　　　　　　　　　　　　　　　　　　　Analysis

¶ 25　　As a creature of statute, the Employee Appeals Board has only those powers that are conferred upon it by law and any action it takes must be authorized by its enabling legislation. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005). When the Board renders a decision that it has no statutory authority to make, it acts without "jurisdiction"[1]

_____

[1]"Although the term 'jurisdiction' is not strictly applicable to an administrative body, this court has held that the term may be employed to designate the authority of an administrative body to act." *Alvarado*, 216 Ill. 2d at 554 (citing *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989)).

and its decision is void. *Id*. at 553-54. The scope of authority conferred on the Board by its enabling legislation is a question of statutory interpretation that we review *de novo*. *Id*. at 553.

¶ 26　　In this case, the appellate court concluded that the Employee Appeals Board acted contrary to its enabling authority when it rendered its decision and, therefore, the Board lacked jurisdiction to discharge plaintiff. The appellate court noted initially that the discharge proceedings in this case began in May of 2001 and, thus, were "to be initiated pursuant to the rules and regulations promulgated in accordance with the Bureau of Human Resources Ordinance," which took effect in April of 2000. 398 Ill. App. 3d at 326. The appellate court then noted that the human resource rules

"provide a distinct procedural mechanism for a postdisciplinary appeal to the Employee Appeals Board. Instead of a hearing on the employer's charges before the Civil Service Commission, as provided for under the repealed civil service rules (Cook Co. Civ. Service R. IX, § 1), the Bureau of Human Resources Ordinance, which created the Employee Appeals Board, provides that after written notice of the disciplinary decision by the department head or designee:

'The employee may appeal the department head's or designee's decision to the Employee Appeals Board by making a written request therefor within five calendar days of the effective date of discipline.' Cook Co. Municipal Code § 44–50(b)(l) (amended April 5, 2000)." 398 Ill. App. 3d at 326.

¶ 27　　From this, the appellate court determined that the Employee Appeals Board's authority was limited to hearing appeals from disciplinary "decisions" rendered by the employee's department head or designee. The appellate court then concluded: "the Board's authority to hear an appeal from an employer's decision was never invoked as the District never rendered a disciplinary decision from which plaintiff could have appealed. [Citation.] Accordingly, the Employee Appeals Board's decision of September 20, 2004, is also void and a nullity." 398 Ill. App. 3d at 327. In short, the appellate court reasoned that because Superintendent Nevius made a "recommendation" that discharge proceedings be initiated against plaintiff rather than a "decision" that he be discharged, the Employee Appeals Board's decision was void. We disagree.

¶ 28　　Whether a challenged administrative action is merely erroneous rather than statutorily unauthorized and void for want of jurisdiction can be difficult to discern. See *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 244 (1989) ("theoretically, anytime an agency makes an erroneous decision, it acts without statutory authority because the legislature and the statutes do not give an agency the power to make erroneous decisions"); *Newkirk v. Bigard*, 109 Ill. 2d 28, 39 (1985) ("A party could merely point to any provision of a statute which was not complied with and claim that the agency did not have authority to act unless the provision was complied with."); *Hartt v. Hartt*, 397 A.2d 518, 522 (R.I. 1979) (the distinction between mere error and actions which exceed jurisdiction has "often proved difficult to draw").

¶ 29　　In this case, the appellate court did not discuss the context of Nevius' failure to render a "decision" discharging plaintiff and did not explain why that failure was more than mere

error. See *Business & Professional People for the Public Interest*, 136 Ill. 2d at 245 ("We are confident, however, that a reviewing court can make the appropriate distinction between an erroneous decision and one which lacks statutory authority."). The context is important. The Employee Appeals Board does not review discharge decisions like an appellate court reviews decisions of the circuit court. Instead, the hearing conducted before the Board is a *de novo* proceeding in which evidence is heard and findings are made. See Cook County Municipal Code § 44–50. No deference is given to a department head's decision to discharge an employee. The practical importance of having a department head discharge an employee, therefore, is that it saves the time and resources of the Board if the employee chooses not to appeal. Once the matter is before the Board, however, the absence of a department head's decision has no effect on the proceedings or on the merits of the disciplinary charges before the Board. The appellate court did not explain why, in light of these facts, Nevius' failure to render a decision was so fundamental an error as to be deemed jurisdictional.

¶ 30    We need not explore this issue further ourselves. The plain language of the Cook County Municipal Code makes it clear that, even if it was error for Nevius to make a "recommendation" rather than a "decision" regarding discharge, the Board possessed the statutory authority to discharge plaintiff.

¶ 31    Section 44–50 of the Cook County Municipal Code sets forth the procedures for disciplinary actions brought against employees. Paragraph (b)(2) of that section states that

> "[n]othing [in] this article shall deprive the Employee Appeals Board of jurisdiction to decide the merits of the disciplinary action." Cook County Municipal Code § 44–50(b)(2).

The "article" referred to is article II, "Personnel Policies," of chapter 44 of the Cook County Municipal Code, the provisions which, among other things, set forth the human resource rules and authorize the creation of the Employee Appeals Board. Accordingly, the plain language of the Code states that the failure of a party to comply with the human resource rules does not deprive the Board of jurisdiction to decide the merits of a disciplinary matter. In other words, contrary to the appellate court's reasoning, Nevius' failure to render a disciplinary "decision" was not fatal to the Employee Appeals Board's jurisdiction. Notably, the appellate court did not mention section 44–50(b)(2) in its opinion.

¶ 32    Plaintiff maintains, however, "that the process of rendering a disciplinary decision by the department head or designee is not addressed in § 44–50 of the Code or anywhere in that Article of the Code." Therefore, according to plaintiff, the Forest Preserve District's "failure to render a disciplinary decision for [plaintiff] to appeal to the Board is not covered 'in this Article' as the language of section 44–50(b)(2) requires." This is incorrect. The process of rendering a disciplinary decision is specifically referenced in section 44–50(b)(1) of the Code and, therefore, is covered by the language of section 44–50(b)(2).

¶ 33    The appellate court also concluded that the seven-day hearing held before the members of the Employee Appeals Board was void because the Board erroneously applied the civil service rules during the hearing. In so holding, the appellate court noted that the civil service rules were no longer in effect when the hearing took place. 398 Ill. App. 3d at 326. The appellate court also rejected the Board's conclusion that the matter had been transferred to

the Board from the Civil Service Commission. The appellate court explained that only those matters that were pending before the Civil Service Commission as of April 5, 2000, were to be continued for disposition pursuant to the civil service rules. See Cook County Municipal Code § 44–48(c). Because the charges in this case were not brought until 2001, the appellate court concluded that the matter did not fall under this provision. Accordingly, the court held that "the Employee Appeals Board had no authority to hear or render a decision on the District's written charges pursuant to the repealed civil service rules" and, thus, the hearing was void. 398 Ill. App. 3d at 327.

¶ 34     Again, however, section 44–50(b)(2) of the Code makes it clear that even if it was error for the Board to proceed under the civil service rules and allow plaintiff to contend that his five-year suspension was unlawful under those rules, the Board did not lose jurisdiction.

¶ 35                                          Conclusion

¶ 36     The appellate court erred in holding that the Employee Appeals Board lacked jurisdiction to render its decision discharging plaintiff. Accordingly, we reverse the judgment of the appellate court and remand this cause to that court to address the issues that were raised by plaintiff in his original appeal.

¶ 37     Appellate court judgment reversed;

¶ 38     cause remanded.

¶ 39     JUSTICE THEIS took no part in the consideration or decision of this case.